❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of ) 
*(Briefly describe the property to be searched* ) 
*or identify the person by name and address)* ) Case No. 25-879M(NJ)
7662 North 49th Street, )
Brown Deer, WI 53223 )
)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Eastern___ District of ___Wisconsin___
*(identify the person or describe the property to be searched and give its location)*:

see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___5/15/2025___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Jospeh___ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for ___ days *(not to exceed 30)* ❏ until, the facts justifying, the later specific date of ___ .

Date and time issued: ___5/1/2025 @ 11:08 a.m.___

*Judge's signature*

City and state: ___Milwaukee, Wisconsin___ Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is 7662 North 49th Street, Brown Deer, WI 53223, including

its attached garage and detached shed-like structure, depicted below:



Case 2:25-mj-00879-NJ    Filed 05/01/25    Page 3 of 38    Document 1

**ATTACHMENT B**

*Property to be seized*

1.      All records relating to violations of 18 U.S.C. 922(o) (Possession of Machine Gun),
involving Jakari O. Simmons, DOB: 01/17/2004 and occurring after April 14th, 2025, including:

      a.   Firearms, ammunition, firearm accessories, to include pistols, handguns,
shotguns, rifles, machine guns, silencers, NFA weapons, magazines

      b.   Records and information relating utility bills, writings, cell phones, computers,
receipts, notes, ledgers, receipts and/or other documentary evidence
establishing who is in control of the premises;

      c.   Records and information relating to the identity or location of the suspects.

2.      Computers or storage media used to commit the violations described above.

3.      For any computer or storage medium whose seizure is otherwise authorized by
this warrant, and any computer or storage medium that contains or in which is stored records
or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

      a.   evidence of who used, owned, or controlled the COMPUTER at the time the
things described in this warrant were created, edited, or deleted, such as logs,
registry entries, configuration files, saved usernames and passwords, documents,
browsing history, user profiles, email, email contacts, "chat," instant messaging
logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

2

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

3

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**7662 North 49th Street, Brown Deer, WI 53223** | )<br>)<br>)<br>)<br>)<br>)    Case No. 25-879M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | possession of a machine gun |

The application is based on these facts:

see attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Richard Klarkowski, FBI TFO**

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: 5/1/2025

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Richard J. Klarkowski, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the premises known as 7662 North 49th

Street, hereinafter "Subject Premises," further described in Attachment A, for the things

described in Attachment B.

2.      I am currently a Police Officer with the City of Milwaukee Police Department and

have been since August 5, 2012. Since April 1, 2020, I have been assigned as a Task Force Officer

(T.F.O.) with the Federal Bureau of Investigation's (F.B.I.) Milwaukee Area Safe Streets Task Force

(MASSTF). Since 2020, I have investigated violations of federal law, directed drug and street gang

investigations, obtained and executed search and arrest warrants related to the distribution of

illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an

investigative or law enforcement officer of the United States within the meaning of Title 18,

United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of

and to make arrests for federal offenses.

3.      I have been trained in a variety of investigative and legal matters, including the

topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable

cause. I have participated in criminal investigations, surveillance, search warrants, interviews,

and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

4.      The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents/law enforcement officers. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.      Since February 2025, the Milwaukee Police Department (MPD) and Federal Bureau of Investigation (FBI), have been investigating Jakari O. Simmons, (DOB 01/17/2004), for possession of machine guns.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Jakari O. Simmons has committed violations of 18 U.S.C. § 922(o) (Possession of Machine Gun).

## PROBABLE CAUSE

### *Debrief of CHS #1*

6.      I am currently working with a Confidential Human Source, hereafter referred to as CHS, who I believe is reliable and credible. Since approximately February 2025, CHS has provided information to law enforcement officers concerning criminal activity in the Milwaukee, WI area.

7.      I know that the CHS is a credible person and has been cooperating with the Federal Bureau of Investigation since approximately February 2025. CHS has prior arrests for

2

Possession of Marijuana, Possession of a Machine Gun and Possession with Intent to Deliver Marijuana. CHS has conducted at least one (1) controlled buy related to firearms on behalf of case agents. After the controlled buy, case agents met with CHS and CHS made statements about what occurred during the buy. Case agents then reviewed audio or video footage made by CHS of the transaction and found that it was consistent with CHS's statement. CHS has provided information on Milwaukee area narcotic and firearm traffickers that has been independently corroborated by law enforcement. The CHS is cooperating with law enforcement for consideration regarding a federal indictment related to narcotics trafficking and illegal firearm possession. For these reasons, case agents believe that the CHS is reliable.

8.      In March 2025, FBI Special Agent David Shamsi spoke with the CHS regarding an individual known to them as "anom" who is manufacturing "switches" in the Greater Milwaukee area.

9.      I know that "switches" is a street term commonly used for full auto sears. I know that full auto sears illegally convert semiautomatic firearms into fully automatic machine guns, meaning one pull of a firearm trigger causes the firearm to fire multiple bullets. I know that full auto sears are considered a machine gun by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and are illegal to possess under both state and federal law. See Wisc. State Statute 941.26(1g)(a) "No person may sell, possess, use, or transport any machine gun or other full automatic firearm."); 18 U.S.C. § 922(o) (Possession of Machine Gun).

10.    The CHS stated they knew for "anom" to be Jakari O. Simmons (B/M, 01/17/2004). The CHS stated that they have known Simmons for the last three years. The CHS stated they know for Simmons lives at the address of 7662 N 49th St, Brown Deer, WI 53223. The CHS stated that Simmons uses a 3D printer to manufacture drop-in full auto sears for assault rifle, hereafter referred to as AR, as well as AR lower receivers.

### CONTROLLED EVIDENCE PURCHASE FROM SIMMONS

11.    During mid-April 2025, FBI Special Agent David Shamsi and I met with the CHS to conduct a controlled purchase of a firearm from Simmons.

12.    I conducted a search of the person of the CHS and found no illegal contraband or US Currency. I then provided the CHS with pre-recorded buy money to complete the controlled purchase.

13.    Prior to the controlled buy, Simmons stated to the CHS that the firearm purchase would be conducted near his residence (which the CHS knew to be 7662 N 49th St, Brown Deer, WI 53223). While on surveillance, TFO Kristian Perales observed Simmons outside that residence, wearing a black hooded sweatshirt. Located in the driveway of the residence was a blue 2020 Ford F-150 pickup truck (WI SZ8170, VIN #1FTEW1EP8LFB45076). TFO Perales observed a tall cardboard box leaned up on the rear bumper of the vehicle. A wanted check of that vehicle revealed that it was registered to Sheree L. Hayes (B/F, 06/16/1982) at the address of 7662 N 49th St, Brown Deer, WI 53223.

4



5



14.     The CHS approached the target location for the controlled purchase and was observed doing an exchange of the pre-recorded US Currency for a box that contained a firearm. TFO Perales observed Simmons enter the backyard to the residence, while the CHS left the area on foot.

15.     I later met with the CHS at a pre-determined location to discuss the controlled buy

from Simmons. CHS stated that once they arrived at Simmons's residence, they exchanged the pre-recorded US Currency for a cardboard box containing a firearm. The CHS stated that once the purchase was complete, they left the area on foot.

16.     The CHS turned over to me a cardboard box that contained a semiautomatic rifle. This box was the same box first observed by TFO Perales as described in paragraph 13. After closely examining the rifle during the inventory process, I observed that the rifle was equipped with an internal drop in auto sear that illegally converts the semiautomatic rifle into a fully automatic machine gun. The firearm was cleared and rendered safe by SA Shamsi and placed on FBI Inventory.

17.     During the week of April 20th, 2025, I spoke with the CHS regarding Simmons trafficking a large amount of drop-in auto sears.

18.     The CHS showed case agents what appeared to be a photograph containing multiple drop-in auto sears for assault rifles posted to Simmons's Telegram channel. The photograph appeared to be auto sears that were recently made using a 3D printer and had excess filament around the auto sears that were just made. The CHS later showed case agents a video that depicted the same auto sears that had the excess filament was shaved off.

7



19.    The CHS provided case agents with a post from Simmons's Telegram channel depicting pricing for bulk amounts of "switches". Depicted on the Telegram post was "Switches – 5 for $150, 20 for $250, 20 for $300, 30 for $400, 40 for $500, 50 for $600, 100 for $1,000, 200 for $1,750, 300 for $2,500, 400 for $3,250, 500 for $4,000, 1,000 for $8,000".



20.     Simmons later confirms in another post that he currently has nineteen (19) AR switches up for sale.

21.     I know that Telegram is generally chosen instead of regular texting for the company's emphasis on privacy, security, and features like cross-device syncing and large file sharing capabilities. Telegram offers end-to-end encryption for private chats and self-destructing

9

messages, along with the ability to access your messages from multiple devices. Additionally, Telegram allows for larger group chats and channels to broadcast messages, features not readily available with standard texting. Telegram allows users to connect without revealing their phone numbers, using usernames instead, which appeals to those seeking greater anonymity.

22. Through training and experience I know that cellular devices, laptops, and tablets are items commonly stored inside someone's residence. I know that these items hold sentimental value and other valuable information on them that would prevent them from being sold or destroyed.

23. Case agents are aware, based upon their training and experience and the investigation to date, that drug and firearm traffickers commonly maintain evidence of their transactions, including ledgers, financial documents, U.S. currency, cellular telephones, customer contact information, jewelry or other items purchased with their proceeds, in their homes or "stash" houses. Case agents are also aware it is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time. Because narcotics and firearm trafficking generate large sums of cash, it typically requires the keeping of detailed records as to the distribution of narcotics and firearms, as well as the laundering of the proceeds. Such records also typically provide evidence as to the identity of additional criminal associates who are facilitating the laundering of the narcotics proceeds on behalf of the organization. These records, unlike

10

controlled substances and firearms, are often maintained for long periods of time, even several years, based on case agents' training and experience. It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, stash houses, or personal residences.

    a. I have learned about the manner in which individuals and organizations distribute narcotics or firearms in Wisconsin as well as in other areas of the United States;

    b. I am familiar with the coded language utilized over the telephone to discuss narcotic and firearm trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances and firearms;

    c. I know narcotic and firearm traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the firearm and drug traffickers, the firearm and drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

    d. I know narcotic and firearm traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing firearm and drug

11

trafficking business;

e.  I know it is common for persons involved in narcotic and firearm trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

f.  I know it is common for narcotic and firearm traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances and firearms;

g.  It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time.  It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in

12

their businesses, offices, or personal residence.

h. It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

i. I know narcotic and firearm traffickers often use electronic equipment such as telephones, pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conducting drug and firearm trafficking activities;

j. I know when narcotic and firearm traffickers amass large proceeds from their sales, the narcotic and firearm traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, narcotic and firearm traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities

13

brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

k.   I know narcotic and firearm traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

l.   I am familiar with computers, cellular telephones, pagers and their uses by narcotic and firearm traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their associates and financial institutions. I also know that firearm traffickers use these devices to record their transactions and aspects of their lifestyle related to narcotic and firearm trafficking, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices. I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email

14

addresses by the owner of the devices;

m.   Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the firearm or drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

### **The Premises to be Searched**

24.     According to records with the Wisconsin Department of Transportation, Simmons updated his address to 7662 North 49th Street, Brown Deer, WI 53223, on July 5th,

15

2023 (previously defined as the Subject Premises). I know the Subject Premises, based on surveillance, to have an attached garage. I also know the Subject Premises, based on review of electronic images of the same, to have a detached shed-like structure. Based on my training and experience, I know that individuals engaged in the manufacture of auto sears will typically utilize sheds, garages, and attics while engaged in the preparation and manufacture of these materials, because (1) they know this activity is illegal and appreciate the additional secrecy afforded by these spaces; and (2) the manufacturing of these materials typically requires a large amount of room, which these spaces afford. I therefore request permission to search the home, the attached garage, and the detached shed-like structure at the Subject Premises.

25.     There is probable cause to believe that evidence of 18 U.S.C. § 922(o) (Possession of Machine Gun) will be located at the Subject Premises occupied by Jakari O. Simmons.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be

16

directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

27.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the Subject Premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

17

28.     I submit that if a computer or storage medium is found on the Subject Premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few

18

examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

29. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the Subject Premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web

19

browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

20

residence. The existence or absence of anti-virus, spyware, and malware

detection programs may indicate whether the computer was remotely accessed,

thus inculpating, or exculpating the computer owner. Further, computer and

storage media activity can indicate how and when the computer or storage

media was accessed or used. For example, as described herein, computers

typically contain information that log: computer user account session times and

durations, computer activity associated with user accounts, electronic storage

media that connected with the computer, and the IP addresses through which

the computer accessed networks and the internet. Such information allows

investigators to understand the chronological context of computer or electronic

storage media access, use, and events relating to the crime under investigation.

Additionally, some information stored within a computer or electronic storage

media may provide crucial evidence relating to the physical location of other

evidence and the suspect. For example, images stored on a computer may both

show a particular location and have geolocation information incorporated into

its file data. Such file data typically also contains information indicating when the

file or image was created. The existence of such image files, along with external

device connection logs, may also indicate the presence of additional electronic

storage media (e.g., a digital camera or cellular phone with an incorporated

21

camera). The geographic and timeline information described herein may either

inculpate or exculpate the computer user. Last, information stored within a

computer may provide relevant insight into the computer user's state of mind as

it relates to the offense under investigation. For example, information within the

computer may indicate the owner's motive and intent to commit a crime (e.g.,

internet searches indicating criminal planning), or consciousness of guilt (e.g.,

running a "wiping" program to destroy evidence on the computer or password

protecting/encrypting such evidence in an effort to conceal it from law

enforcement).

c.  A person with appropriate familiarity with how a computer works can, after

examining this forensic evidence in its proper context, draw conclusions about

how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other

forms of forensic evidence on a storage medium that are necessary to draw an

accurate conclusion is a dynamic process. While it is possible to specify in

advance the records to be sought, computer evidence is not always data that can

be merely reviewed by a review team and passed along to investigators.

Whether data stored on a computer is evidence may depend on other

information stored on the computer and the application of knowledge about

22

how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

30. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises

23

could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

24

31.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## <u>CONCLUSION</u>

32.     I submit that this affidavit supports probable cause for a warrant to search the Subject Premises described in Attachment A and seize the items described in Attachment B.

_____

## <u>ATTACHMENT A</u>

*Property to be searched*

The property to be searched is 7662 North 49th Street, Brown Deer, WI 53223, including

its attached garage and detached shed-like structure, depicted below:



## ATTACHMENT B

### *Property to be seized*

1.      All records relating to violations of 18 U.S.C. 922(o) (Possession of Machine Gun),
involving Jakari O. Simmons, DOB: 01/17/2004 and occurring after April 14th, 2025, including:

  a.   Firearms, ammunition, firearm accessories, to include pistols, handguns,
       shotguns, rifles, machine guns, silencers, NFA weapons, magazines

  b.   Records and information relating utility bills, writings, cell phones, computers,
       receipts, notes, ledgers, receipts and/or other documentary evidence
       establishing who is in control of the premises;

  c.   Records and information relating to the identity or location of the suspects.

2.      Computers or storage media used to commit the violations described above.

3.      For any computer or storage medium whose seizure is otherwise authorized by
this warrant, and any computer or storage medium that contains or in which is stored records
or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

  a.   evidence of who used, owned, or controlled the COMPUTER at the time the
       things described in this warrant were created, edited, or deleted, such as logs,
       registry entries, configuration files, saved usernames and passwords, documents,
       browsing history, user profiles, email, email contacts, "chat," instant messaging
       logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

2

k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.   contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

3

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.